LENIN VASQUEZ,

                  *Plaintiff*,

                                                                       MEMORANDUM AND
                                                                           ORDER
               - against -                                        08-CV-4184

POLICE OFFICER ANGELO PAMPENA,

                  *Defendant*.

----------------------------------------------------------------- X

A P P E A R A N C E S:

    RICHARD J. CARDINALE
        26 Court St. Suite 1815
        Brooklyn, NY 11242
        *Attorney for Plaintiff*

    MICHAEL A. CARDOZO
        Corporation Counsel of the
        City of New York
        100 Church St., Room 3-178
        New York, NY 10007
    By:    Brian G. Maxey
        *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        Plaintiff Lenin Vasquez brings this action pursuant to 42 U.S.C. § 1983, alleging that Police Officer Angelo Pampena of the New York City Police Department falsely arrested him in violation of the United States Constitution. Pampena moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, the motion to dismiss is denied.

BACKGROUND

The relevant portion of Vasquez's complaint, the factual allegations of which are assumed true for the purposes of this motion, reads as follows:

> 7. During the evening of February 7, 2008, plaintiff was watching the soccer game of U.S.A. v. Mexico in the Colombian restaurant "Pollo's Mario" located in the vicinity of 81st Street and Roosevelt Avenue, Queens, New York.
>
> 8. The soccer game ended at approximately 1:00 a.m.
>
> 9. Plaintiff left the restaurant at approximately 1:30 a.m.
>
> 10. While plaintiff was walking down Roosevelt Avenue towards the 74th Street subway station, he observed Officer Angelo Pampena and a second officer on 80th Street asking pedestrians for identification.
>
> 11. Plaintiff approached the officers and asked in a polite manner whether something had happened in the neighborhood.
>
> 12. Officer Pampena told plaintiff that it was none of his business and to go home.
>
> 13. Plaintiff immediately left the scene and started walking toward his destination.
>
> 14. A moment later, Officer Pampena told plaintiff to come back.
>
> 15. Plaintiff walked back over to the officers.
>
> 16. Officer Pampena ordered plaintiff to show him identification and to remove his coat.
>
> 17. Plaintiff complied with Officer Pampena's orders.
>
> 18. Officer Pampena ordered plaintiff to stay put while he issued plaintiff a summons.
>
> 19. While Officer Pampena was writing the summons, he held on to and read plaintiff's identification card.
>
> 20. While Officer Pampena was writing the summons, the second officer on the scene stayed close to and watched plaintiff.
>
> 21. Plaintiff knew that he could not walk away from the officers until Officer

Pampena issued him the summons and told him he could leave.

22. Officer Pampena issued plaintiff a summons falsely charging him with "disorderly conduct/refusal to leave."

23. At no time did plaintiff commit the crime(s) alleged in the summons.

24. The summons instructed plaintiff to appear in criminal court on April 15, 2008.

25. After Officer Pampena handed the summons and the identification card to plaintiff, he told plaintiff that he could leave.

26. On or about February 8, 2008, in accordance with the terms of his employment with the State of New York, plaintiff informed his supervisor that he had been arrested on February 7, 2008.

27. On April 15, 2008, plaintiff appeared in criminal court to answer the summons.

28. A court clerk informed plaintiff that a criminal court judge had dismissed the summons as legally insufficient.

Amended Compl. ¶¶ 7-28.

## DISCUSSION

Pampena argues "that plaintiff cannot proceed with a false arrest claim premised solely on the issuance of a summons" because "issuance of a summons does not constitute a seizure under the Fourth Amendment." Def. Mem. at 5. This argument misconstrues Vasquez's false arrest claim, which actually suggests two distinct deprivations of liberty: one that took place when Pampena ordered Vasquez to stand by while he wrote the summons and another caused by the issuance of a summons ordering Vasquez to appear in court on April 15, 2008. Defendant elsewhere appears to acknowledge the dual bases for Vasquez's false arrest claim, observing that it "is premised entirely upon the issuance of a summons *and* the period of time it took Officer Pampena to write the summons itself." Def. Mem. at 4 (emphasis added). If Vasquez's complaint is viewed this way, the briefs submitted by the parties pass in the night:

Vasquez primarily argues that the circumstances surrounding the issuance of the summons constituted a seizure, while Pampena mainly argues that the "issuance" of the summons itself did not. I address each alleged deprivation of liberty in turn.

A.   *Detention While Pampena Wrote the Summons*

"A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In this case, Pampena "ordered" Vasquez to show his ID, ordered him to "stay put" while he issued a summons, and "held on to" Vasquez's ID while he wrote the summons. Amended Compl. ¶¶ 18-21. He then gave Vasquez the summons and his ID and told him he could leave. During this period, the duration of which is not specified, Vasquez "knew he could not walk away." *Id.* at ¶ 21. I have little difficulty concluding that, under the circumstances alleged, Pampena seized Vasquez while he was writing out the ticket.

Pampena effectively concedes that this conduct constitutes a seizure. He suggests, however, that confinement less intrusive than a formal "arrest" cannot give rise to an action under § 1983. I disagree.

Although complaints involving police detention are commonly referred to as "false arrest" claims, § 1983 protects against constitutional violations, and the Fourth Amendment, the constitutional provision implicated by Vasquez's claim, bars unreasonable seizures, not merely unreasonable arrests. *See* U.S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."). Similarly, the common law tort analogue to such a Fourth Amendment claim is "false imprisonment," and a complaint sounding in this tort need not allege

4

an arrest, merely "confinement." *Broughton v. State*, 37 N.Y.2d 451, 456 (1975). "The detention, restraint, or confinement required in an action for false imprisonment need not have occurred under an assertion of legal authority or in a place designed for detention, and nothing fitting the popular impression of an arrest or imprisonment need have occurred. Any physical detention is an imprisonment." 59 N.Y. Jur. 2d False Imprisonment § 16.

The cases Pampena cites to the contrary do not survive scrutiny. In *Porat v. Lincoln Towers Community Ass'n*, 2005 WL 646093 (S.D.N.Y. Mar. 21, 2005), the plaintiff was taking pictures of an apartment complex from the street. After entering the courtyard of a building he was photographing, he was approached by security guards, asked for his identification and his pictures, and told he was under civilian arrest. He tried to leave the premises, but the guards prevented him. After several minutes, two New York City police officers arrived and spoke to the head security guard out of earshot of plaintiff, at which time one of the officers gave plaintiff an appearance ticket for trespassing. In rejecting plaintiff's "false arrest and imprisonment" claim against the police officers, the court observed that:

> Ordinarily, in evaluating false arrest and imprisonment claims against police officers, courts must determine whether the officer had probable cause to affect an arrest. Here, however, Officer Lopez issued Plaintiff a "summons for trespassing" and stated that if he "did not appear in court on the appointed date, a warrant would issue for his arrest." (Complaint, ¶¶ 38-39). Therefore, Plaintiff's false arrest and imprisonment claim fails because his pleading states that he was simply never arrested."

*Porat v. Lincoln Towers Comm. Ass'n*, 2005 WL 646093 at *4 (S.D.N.Y. Mar. 21, 2005).

It is unclear what to make of the court's statement that plaintiff was never arrested, as the term "arrest" is frequently used but rarely defined. It could mean that to the extent the plaintiff was detained, he was not detained by the police, but by the private security guards. That is certainly a reasonable interpretation of the facts in *Porat*, and it would provide

5

sufficient reason to dismiss a false imprisonment claim against the police officers.[1]  However, to the extent that *Porat* suggests that confinement short of a formal arrest is not actionable under § 1983, such a rule is neither explained nor required in that case.

*Porat*'s statement about the lack of an arrest is followed by a cite to *Nazarian v. Compagnie Nationale Air France*, 989 F.Supp. 504, 508 (S.D.N.Y.1998).  In that case, the plaintiffs, Iranian nationals residing in the United States who were returning to the United States from Greece, missed their connecting flight in Paris.  Because the next available flight did not depart until the next day, the plaintiffs agreed to have employees of Air France take their passports to airport immigration officials to arrange for temporary visas.  The officials denied the visas because plaintiffs were Iranian nationals, and then arrested the plaintiffs.  Plaintiffs sued Air France for, *inter alia*, false arrest and false imprisonment.  Although these claims were ultimately dismissed for lack of jurisdiction, the court in passing also observed that "Air France did not 'arrest' the Nazarians, it merely "identif[ied] a potential culprit" to the police. *Id.* at 508. While this statement is obviously dicta, I certainly do not quibble with the suggestion that one does not confine a plaintiff for false imprisonment or false arrest purposes simply by bringing that person's existence to the attention of the police.  However, the case simply does not address the magnitude of detention required to state a Fourth Amendment claim under § 1983, as the case did not involve either of these provisions.

*Bissinger v. City of New York*, 2007 WL 2826756, at *8 (S.D.N.Y. Sept. 24, 2007) cites the above cases, without further analysis, for the proposition that "a § 1983 claim for false arrest under the Fourth Amendment" must be "premised on an actual arrest."  As the above analysis suggests, I cannot fathom how *Narazian* and *Porat* establish such a rule. *Bissinger* also claims that this proposition is established by *Griffin-Nolan v. Providence Wash. Ins. Co.*, No. 04

---

[1] Porat did not bring false imprisonment claims against the private officers.

6

Civ. 1453(FJS), 2005 WL 1460424, at *7 (N.D.N.Y. June 20, 2005).  In that case, however, the court explicitly stated that "[c]onduct that accompanies the issuance of an appearance ticket certainly can constitute confinement for purposes of a false arrest or false imprisonment claim." *Id.*  Because an appearance ticket is generally issued in lieu of a formal arrest, *Griffin-Nolan* strongly suggests that intrusive conduct short of an arrest may nonetheless constitute confinement.

Similarly, the state cases cited by Pampena do not persuasively establish that detention short of arrest cannot constitute false imprisonment as a matter of law.  In *Pritchett v. State*, 403 N.Y.S.2d 579, 579 (3d Dep't 1978) (affirming dismissal of false arrest claim), a neighbor filed a complaint against the plaintiff, and a police officer interviewed both parties and "thereafter" issued an appearance ticket.  The court found that plaintiff "was not restrained in any way so as to justify an award for false arrest." *Id.*  Contrary to the facts in this case, there is no indication that Pritchett's encounter with the police was non-consensual, and, as the ticket apparently did not issue until after the investigatory interviews, there is no indication that plaintiff was detained while the ticket was written.  In *Pozzanghera v. Anderson*, 525 N.Y.S.2d 87, 87 (4th Dep't 1988), the facts surrounding the issuance of the ticket are not described; the court rejects plaintiff's "sole contention" "that he was detained by the service of the appearance ticket," and stated that this service "did not restrict plaintiff's freedom," citing *Pritchett*. *Id.* Thus, *Pozzanghera* does not address whether the circumstances surrounding the issuance of a ticket might constitute tortious confinement.

In *Kramer v. Herrera*, 576 N.Y.S.2d 736, 736 (4th Dep't 1991), the record established that "plaintiff was arrested on May 30, 1989 and that she was issued an appearance ticket."  The court noted that her claim was time-barred, and then observed that plaintiff "was

never held in actual custody by any law enforcement agency as a result of the charge which was filed against her. The service of an appearance ticket does not restrict plaintiff's freedom and, therefore, does not form a basis for a wrongful arrest claim." *Id.* (citing *Pozzanhera v. Anderson*). In light of this language, *Herrera* addresses only whether the *issuance* of a ticket constitutes confinement, and does not address when or whether the circumstances surrounding the issuance of the ticket might constitute confinement.

*Village of Ellenville v. Searles*, 652 N.Y.S.2d 151, 151 (3d Dep't 1997), seems more promising for Pampena's argument. It states that a "brief traffic stop for service of process, with no actual custody, is insufficient to establish the requisite confinement" for false imprisonment. *Id.* Rather than explaining that proposition, however, it merely cites to *Kramer* and *Pozzanghera*. As discussed above, those cases are inapposite. Similarly, in *Du Chateau v. Metro-North Commuter R. Co.*, 253 A.D.2d 128 (1st Dep't 1999), the plaintiff was involved in an incident on a commuter train and was escorted off the train by Metro North employees, whereupon he was met by police officers who gave him an appearance ticket. The Appellate Division concluded that plaintiff failed to show "evidence that he was confined" because "any detention was incidental to the issuance of a summons." *Id.* at 132. This analysis is problematic, as it suggests that any detention that might have occurred was somehow cured by the issuance of the summons, a result that would be wholly unprecedented and hardly logical.[2]

I am similarly unpersuaded by Pampena's argument that suits alleging "*de minimis* seizures" should be dismissed on policy grounds. Def. Reply Mem. 4. There is no authority for such policy-making, and in any event I do not regard it as an attractive policy. A

---

[2] Pampena's counsel advanced this argument explicitly at oral argument. He conceded that a suspicious street stop like the one alleged here can constitute a seizure for the purposes of a § 1983 claim, but asserted that the Fourth Amendment cannot be violated if the officer proceeds to write a summons. In my view, the issuance of a summons in those circumstances exacerbates, rather than extinguishes, the Fourth Amendment violation.

8

rational plaintiff will not bring suit for an insignificant violation because the effort and expense would dwarf any potential recovery, and an irrational plaintiff would likely not be deterred by the rule Pampena suggests. Furthermore, the law currently provides substantial protections against frivolous suits, including the qualified immunity doctrine, that Pampena has thus far failed to utilize.

In short, nothing in Pampena's papers or the cases cited therein convinces me that a plaintiff who has pleaded a seizure under the Fourth Amendment has not alleged sufficient confinement to maintain a false arrest action under § 1983. "The first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which the defendant is charged," and the "validity of that claim must then be judged by reference to the specific constitutional standard which governs that right." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (internal quotation marks omitted). Accordingly, I conclude that the brevity of the detention at issue here does not doom Vasquez's claim as a matter of law.

B. *The Issuance of the Appearance Ticket*

An appearance ticket requires its recipient to appear in court within a certain time period, and criminal penalties may be imposed for non-compliance. *See generally* N.Y. Crim. Proc. L. §§ 150.10-.75. As discussed above, the New York appellate courts have consistently held that this restraint does not constitute confinement cognizable under the common law tort of false imprisonment.

In *Murphy v. Lynn*, however, the Second Circuit held that restraints of this sort do implicate Fourth Amendment concerns:

> while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and may order him to

9

> make periodic court appearances, such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment.

118 F.3d 938, (2d Cir. 1997).

As a threshold matter, the relevance of *Murphy* in the pre-arraignment context is unclear. The Second Circuit has suggested that "[w]hether a mere *pre*-arraignment summons constitutes a Fourth Amendment 'seizure' is, in our view, a difficult issue and one that has not yet been resolved in this Circuit." *Dorman v. Castro*, 347 F.3d 409 (2d Cir. 2003); *see also Griffin-Nolan*, 2005 WL 1460424 at *7 (declining to apply *Murphy* in the pre-arraignment context). It is similarly uncertain whether a single compelled court appearance is sufficiently restrictive under *Murphy* to constitute a seizure. Finally, given the uncertainty of the Fourth Amendment's reach in this area, a defendant who runs afoul of *Murphy* in this context might successfully assert a qualified immunity defense.

These questions, though provocative, need not be resolved at this time. The sole ground for dismissal asserted by Pampena is that the issuance of an appearance ticket cannot form the basis of a § 1983 action. This assertion is insufficient to warrant dismissal, however, because Vasquez successfully alleges that the circumstances surrounding the issuance of the summons constituted a Fourth Amendment violation cognizable under § 1983. I need not address whether the summons itself constituted a seizure, and I also need not address the issue of qualified immunity because that defense has not been raised.

## CONCLUSION

Because Vasquez has properly pleaded that he was seized while Officer Pampena wrote out his summons, the motion to dismiss is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
       May 18, 2009